IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Superior Production            :
Partnership, d/b/a PBSI,

        Plaintiff,             :

    v.                         :     Case No. 2:06-cv-0916

Gordon Auto Body Parts Co.,    :     JUDGE SMITH
Ltd., et al.,

        Defendants.            :

ORDER

    This case is yet again before the Court to address issues
which have arisen during the course of discovery concerning
documents showing defendant Gordon's costs of production.  The
latest motion directed to this issue was filed by plaintiff PBSI
on June 8, 2010.  PBSI has also requested oral argument on the
motion.  For its part, Gordon has asked the Court to strike the
affidavit submitted by PBSI as the evidentiary support for its
motion.  For the following reasons, the Court will not hold oral
argument, will not strike the affidavit, and will deny the motion
to compel.

I.  Background.

    This is a predatory pricing case involving truck hoods.
That being so, as PBSI points out (and Gordon does not dispute),
Gordon's cost of production of its hoods is relevant to PBSI's
claim, and discovery on that subject is permissible.

    As explained in the Court's Opinion and Order filed on
December 2, 2008 (Doc. #93), one of the issues raised at that
time was PBSI's request for backup documentation concerning
Gordon's cost records.  Gordon had produced summaries of such
records, and argued that the summaries were accurate and that
production of all of the backup information would be burdensome.

Although the Court expressed some reservations about Gordon's
decision to withhold relevant backup documentation and the fact
that some of the summary information represented average costs
over time rather than actual costs at specific points in time,
the Court, taking into account the burden which production of all
of these documents would impose upon Gordon, ruled that a
rudimentary auditing process was in order.  It directed PBSI to
identify a reasonable amount of backup documentation needed to
verify or dispute the accuracy of the summary information, and
Gordon to respond to any reasonable request for that backup
documentation.  The purpose of this entire endeavor was to allow
PBSI to determine, within reasonable limits, the accuracy of the
summary information it had already obtained through discovery.

According to the attachments to the parties' filings,
shortly after this order issued, the parties conferred about
production of backup documentation.  Gordon did produce
additional documents, and advised PBSI on April 21, 2009, that it
considered the issue resolved.  The issue did not surface again
until PBSI wrote Gordon a letter on February 4, 2010, that it
intended to file a motion to compel with respect to backup cost
documentation.  Gordon responded that it would at least consider
some reasonable request for more information.  PBSI's response
suggested that, rather than seeking additional information to
assist it in verifying that the previously-produced summaries
were accurate, PBSI now wanted Gordon to produce "all documents
for the relevant time period for all of Gordon's costs."  See
Doc. #128-2, Exhibit M to the Declaration of Timothy L. Skelton
in Opposition to Plaintiff's Motion to Compel Production.  When
Gordon declined to do so, the motion to compel was filed.

II.  The Motion to Compel

PBSI's motion to compel is fairly short.  It emphasizes, as
the prior motion did, the relevance of cost information in a

predatory pricing case, and gives several examples about why the
information produced to date is incomplete or insufficient.  It
supports its motion with a declaration from Kent W. Mikkelsen, an
economist, who has done some analysis of the documents which
Gordon has produced.  In Dr. Mikkelsen's opinion, these documents
do not permit a complete analysis of certain aspects of PBSI's
claims.  The problems he notes are:

(1) The information Gordon produced was for five separate
quarters of operation (one in 2004, two in 2006, and two in 2007;
these quarters were apparently chosen in response to PBSI's
request for what the Court's order termed a "reasonable amount"
of backup documentation).  Dr. Mikkelsen acknowledges that this
information "could be used in developing cost estimates for 2006
and 2007" but that "[i]f purchase orders for 2008 and 2009 were
produced, similar comparisons could be made between these years
and 2004."

(2) Information on some purchases made by Gordon in 2004
seem incomplete.  Dr. Mikkelsen gives some examples of products
which he identifies only as "EG487," "EG538," and "EG396," and
notes that the only purchase orders for those products dating
from 2004 relate to the purchase of bubble wrap.  From this
information, he concludes that "[i]t would also be useful to
obtain purchase orders covering all of the products at issue."

This declaration is the only evidence submitted in support
of the motion.  Based on this declaration, PBSI asks the Court to
order Gordon to "produce cost data and documents showing actual
costs for the products in question" and also asks for an award of
attorneys' fees expended in preparing the motion.

III.  <u>The Request to Strike</u>

Before reaching the merits of the motion to compel, the
Court must decide whether to strike Dr. Mikkelsen's declaration.
Gordon argues that because he was not previously disclosed as an

-3-

expert witness, the Court should not allow him to submit a
declaration in support of the motion to compel.  The motion to
strike also contains arguments, similar to those made in Gordon's
response to the motion to compel, about why the Court should
given little or no weight to the declaration.

These latter arguments go to the merits of the motion to
compel, and are not a basis upon which to disregard Dr.
Mikkelsen's declaration altogether.  As far as the former
argument is concerned, Dr. Mikkelsen is not (at least at the
moment) being presented as a trial witness.  The Court knows of
no reason why a discovery motion cannot be supported by a
declaration from an expert other than a testifying witness.  In
some cases, doing so may lead to the need to take discovery from
the witness in order to give the responding party a fair chance
to make its responsive arguments, but that does not appear to be
necessary here.  Consequently, the Court will take Dr.
Mikkelsen's declaration into account in deciding the motion to
compel.

IV.  <u>Discussion and Analysis</u>

It is not entirely clear whether the basis of PBSI's motion
is Gordon's alleged failure to comply with the prior order of the
Court, or the argument that the Court should reconsider that
order in light of new evidence that the procedure mandated by
that order proved insufficient to allow PBSI to obtain the
discovery it needs.  Either way, the Court is not persuaded that
PBSI is entitled to any relief.

The issue about cost documents presented by the prior motion
to compel was restricted to PBSI's desire to test the accuracy of
the summary cost information which Gordon had produced.  The
purpose of the procedure created by the Court was to allow for a
reasonable comparison between information on the summaries and
the actual underlying invoices or purchase orders, so that some

-4-

reasonable conclusion could be drawn about the accuracy of the summaries. The Court did not order production of all of the underlying data because it was persuaded by Gordon's argument that this production would be expensive and burdensome, and that if the summaries proved accurate, it would be unnecessary.

PBSI's motion really does not address these issues. It makes no mention of the summaries, does not rely on any evidence to the effect that the summaries are inaccurate, and does not argue that additional documents are needed in order to verify or disprove the accuracy of the summaries. Rather, Dr. Mikkelsen's declaration states that the purpose of the additional documents which PBSI wants from Gordon is to make some steel price comparisons for 2008 and 2009, and to provide a more complete picture of Gordon's 2004 purchasing activities for three of the products at issue here. In this regard, he states that having all of the underlying cost data would be "useful," but he says nothing about whether it is necessary in order to validate or question the cost information that Gordon produced in more summary form. Consequently, his statements simply do not permit the Court to conclude that the prior order was either incorrectly decided or failed as an attempt to reach a reasonable compromise between PBSI's desire to test the accuracy of Gordon's cost summaries and Gordon's effort to avoid undue expense in responding to discovery. Further, there is no evidence that Gordon did not make a reasonable response to PBSI's request for more documentation as required by the order. Thus, it appears that PBSI is actually asking the Court to deviate from the prior order and grant the prior motion to compel in full by directing Gordon, no matter what the cost, to produce all of the information from which its summaries were prepared, and not just enough information to prove that the summaries are accurate.

The Court sees no need to reconsider its prior ruling on the

basis of Dr. Mikkelsen's brief and vague declaration. Again, the Court has no basis for concluding, at this point, that the cost summaries provided by Gordon are not accurate. Further, there is no new evidence on the issue of whether production of all cost information, as PBSI now requests, is unduly burdensome. The Court has already concluded that it would be so, and the record contains nothing which would draw that conclusion into question. Dr. Mikkelsen's declaration may be additional support for the proposition that production of all of Gordon's backup documentation for its summaries would be "useful," but the Court's prior order was not based on the proposition that production of this information would not be "useful." The Court agreed with PBSI that in a perfect world, where the burdens of producing information would not be a consideration, all of information being sought was relevant. However, the Court also agreed with Gordon that if its summaries were accurate, and their accuracy could be verified through production of less than 100% of the underlying data, it would not be necessary for Gordon to undergo the additional expense of producing all of that data. In short, the posture of the parties with respect to this issue has not changed at all since the Court issued its prior order, and the Court declines PBSI's invitation to make a different decision now.

The Court notes that PBSI has requested oral argument on its motion to compel, and, anticipating a favorable ruling on that request, has not filed a reply memorandum. No party should assume that oral argument will be granted on any motion. See Local Civil Rule 7.1(b)(2). The Court does not deem oral argument necessary to resolve this dispute. Further, the Court does not believe that a reply brief, if it were properly constrained to replying to new matters raised in the opposing memorandum and did not exceed the scope of the issues raised in

-6-

the motion itself, would change the result here.  The Court's decision is based on the insufficiency of the motion and the evidence offered in support of it, and it would be improper for PBSI to offer new evidence or arguments in a reply memorandum. See, e.g., Local Civil Rule 7.2(d) ("When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence").

## V.  Conclusion and Order

For the reasons set forth above, PBSI's motion to compel (#122) and its request for oral argument on that motion are denied.  Gordon's objection to the Declaration of Kent Mikkelsen (#130) is also denied.

## VI.  Appeal Procedure

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge

-7-